KATHY M. TODD,              )
                           )
        Plaintiff,          )
                           )
v.                         )      CASE NO. CV408-034
                           )
UNITED STATES OF AMERICA,   )
                           )
        Defendant.          )
_____)

## O R D E R

Before the Court are the Parties' Cross-Motions for Summary Judgment. (Docs. 19, 23.) For the reasons that follow, the Parties' Motions are **DENIED**.

### BACKGROUND

This suit arises from a dispute over a failure to withhold and remit employment taxes to the United States Government by Digital Wireless Communications, Inc. ("Digital"), ITER Technologies, Inc. ("ITER"), and Northstar Communications, Inc. ("Northstar"). (Doc. 1 at 2.) Specifically, the Internal Revenue Service ("IRS") assessed penalties pursuant to 26 U.S.C. § 6672 against Plaintiff Kathy Todd, the Chief Financial Officer ("CFO") of these companies. (Id.)

Todd is an experienced certified public accountant ("CPA").[1]  (Doc. 21 ¶ 1; Doc. 30 ¶ 1.)  Because of her training, Todd was generally aware that businesses are required to withhold and remit certain employment taxes to the IRS and that the failure to do so can result in penalties.[2]  (Doc. 21 ¶ 2; Doc. 30 ¶ 2.)

In July of 2000, Greg Knowling, President of Digital, hired Todd to serve as CFO for Digital.  (Doc. 21 ¶¶ 3-4; Doc. 30 ¶¶ 3-4.)  The Parties dispute the duties that Todd performed as CFO.  Todd contends that she was never given all of the traditional duties of a CFO (Doc. 30 ¶¶ 3-6), while Defendant contends that Todd performed all of the traditional duties of a CFO (Doc. 21 ¶¶ 3-6).

In July of 2001, Computer Network Engineering ("CNE"), a separate company of which Knowling was president, acquired Northstar and Digital.  (Doc. 21 ¶ 7; Doc. 30 ¶ 7.)  In September 2001, ITER was formed as an umbrella company for Digital, CNE, and Northstar.  (Doc. 21 ¶ 7; Doc. 30 ¶ 7.)  The Government contends that Todd became the CFO for ITER during the reorganization.  (Doc. 21 ¶ 7.)

---

[1] Todd passed the Arizona CPA exam in 1988 and, prior to the year 2000, had 12 years of relevant accounting experience. (Doc. 21 ¶ 1; Doc. 30 ¶ 1.)
[2] The Parties contest Todd's knowledge as to the scope of who could be held responsible for these penalties.  (Doc. 21 ¶ 2; Doc. 30 ¶ 2.)

Todd contests this point. (Doc. 30 ¶ 7.) The Government further contends that Todd was made part of the "management team," and was responsible for hiring and supervising the accounting staff, making purchasing decisions, and making decisions with respect to which creditors and vendors to pay. (Doc. 21 ¶¶ 8, 12.) Todd again contests these facts. (Doc. 30 ¶¶ 8, 12.)

After the merger, Todd had check-writing authority for Northstar, Digital, and CNE. (Doc. 21 ¶ 9; Doc. 30 ¶ 9.) However, Todd contends that she could only sign checks with approval from Knowling (Doc. 30 ¶¶ 10-11), while Defendant contends that Todd had much broader authority (Doc. 21 ¶¶ 10-11). Further, even though Knowling was in charge of the companies, Todd was responsible for preparing, signing, and filing the companies' tax returns. (Doc. 21 ¶ 14; Doc. 30 ¶ 14.) Additionally, between the fall of 2001 and winter of 2002, Todd was involved with the Small Business Association in an effort to obtain a loan for the companies, although the extent of her involvement is disputed. (Doc. 21 ¶ 20; Doc. 30 ¶ 20.)

The companies paid their employees twice per month, and Todd determined the amount of money to be withheld and made the payroll tax deposits "with direction." (Doc. 21 ¶ 15; Doc. 30 ¶ 15.) During the third and fourth quarters

of 2001, ITER, Northstar, and Digital failed to remit their payroll taxes. (Doc. 21 ¶ 16; Doc. 30 ¶ 16.) Todd was aware that the payroll taxes were not being paid and prepared reports to her superiors, Knowling and then Cooper,[3] regarding the extent of the liability. (Doc. 21 ¶ 17; Doc. 30 ¶ 17.) Further, Todd continued to sign checks, paying other creditors at the direction of Knowling and later Cooper.[4] (Doc. 21 ¶ 17; Doc. 30 ¶ 17.)

In January of 2002, Knowling was terminated from his position as president of the companies. (Doc. 21 ¶ 21; Doc. 30 ¶ 21.) After Knowling's departure, Todd briefly had sole check-writing authority, but could not unilaterally pay any debts. (Doc. 21 ¶ 23; Doc. 30 ¶ 23.)

In February or March of 2002, Cooper, who was heavily invested in the companies, increased his level of control in order to protect his investments. (Doc. 21 ¶ 22; Doc. 30 ¶ 22.) Defendant and Plaintiff vigorously disagree on Ms. Todd's responsibilities during this time period. (Doc. 21 ¶¶ 22-26; Doc. 30 ¶¶ 22-26.) Defendant contends that

---

[3] Charles Cooper was an investor in the companies who would later take control of the companies to protect his investments. (Doc. 21 ¶ 22; Doc. 30 ¶ 22.)

[4] While Todd disputes the "suggestion that [she] carelessly signed payments to other creditors while aware of the outstanding tax liability," she does not dispute that she did, in fact, sign checks paying creditors other than the Federal government at this time. (Doc. 30 ¶ 17.)

Todd was responsible for preparing the financial documents for the companies, keeping Cooper apprised regarding the financial status of the companies, and advising Cooper on which debts needed to be paid. (Doc. 21 ¶¶ 22-26.) Todd alleges that Cooper hired his long-time personal and business accountant Karl Schumacher to assist him in handling the companies' financial situation. (Doc. 30 ¶¶ 22-26.) Todd further contends that even Cooper admitted that "he and the other male directors were hard-nosed, disagreeable and stepped on Plaintiff's toes" and that "he and the other investors became at-odds with Plaintiff . . . greatly diminishing her involvement with the companies." (Id.)

Ultimately, Todd resigned her position. (Doc. 21 ¶ 27; Doc. 30 ¶ 27.) Todd contends her resignation was due to Cooper's refusal to pay the delinquent payroll taxes. (Doc. 30 ¶ 27.) However, despite her resignation, Todd continued to serve as the CFO until nearly the end of May 2002. (Doc. 24 ¶ 40; Doc. 32 ¶ 40.) In April 2002, the IRS began investigating the unpaid payroll taxes, requesting payment from the companies. (Doc. 21 ¶ 30; Doc. 30 ¶ 30; Doc. 24 ¶ 41; Doc. 32 ¶ 41.) Todd asked her assistant, Ms. Brazell, to prepare a check for the payroll taxes for Cooper to sign. (Doc. 24 ¶¶ 42-45; Doc. 32

¶¶ 42-45.)   However, Todd contends that Cooper refused to sign the check.   (Doc. 24 ¶¶ 42-45.)   Defendant contests this statement.   (Doc. 32 ¶¶ 42-45.)

In 2005, the IRS proposed assessing Todd the trust fund recovery penalties at issue, a proposal that Todd appealed.   (Doc. 21 ¶ 33; Doc. 30 ¶ 33.)   Todd lost the appeal and on August 8, 2007, pursuant to 26 U.S.C. §§ 6661 and 6672 the following assessments were made against Todd:

| Tax Period | Company | Amount |
|------------|---------|--------|
| 3Q 2001 | Digital | $15,959.08 |
| 4Q 2001 | Digital | $45,572.11 |
| 1Q 2002 | Digital | $20,229.00 |
| 2Q 2002 | Digital | $13,379.81 |
| 4Q 2001 | ITER | $50,718.55 |
| 1Q 2002 | ITER | $45,213.80 |
| 2Q 2002 | ITER | $4,406.29 |
| 3Q 2001 | Northstar | $12,379.40 |
| 4Q 2001 | Northstar | $21,507.26 |
| 1Q 2002 | Northstar | $7,295.41 |

(Doc. 1 ¶ 7.)   Todd then made three separate payments to the IRS of $500, representing the taxes owed for one employee, for one quarter, for each of the companies. (Doc. 21 ¶ 33; Doc. 30 ¶ 33.)   She then filed claims for

refund with the IRS, which were denied.   (Doc. 1, Exs. A, B.)   Subsequently, she filed suit in this Court seeking a refund.   Discovery has completed, and both parties now move for summary judgment in this case.   (Docs. 19, 23.)

**ANALYSIS**

I.   Jurisdiction

Jurisdiction is not at issue for most of the tax periods in this case as the Government has consented to suit by filing counterclaims.   (Doc. 19.)   However, the Government contends that, for the three periods not covered by its counterclaims,[5] this Court lacks subject matter jurisdiction because "Todd failed to pay at least one employee's estimated tax liability for each individual period and file for an administrative refund."   (Id. at 19.)   Plaintiff responds that this Court has subject matter jurisdiction because a taxpayer assessed under 26 U.S.C. § 6672 need only pay the estimated payroll tax for one employee for one quarter for each employer in order to seek a refund.[6]   (Doc. 29 at 13.)

_____

[5] These periods are March 21, 2002 and June 30, 2002 for Digital Wireless, and June 30, 2002 for ITER.   (Doc. 19 at 19.)

[6] In this case, it is undisputed that Plaintiff has paid the tax for one employee, for one quarter, for each employer for which she is asserted to be a responsible party.   (See Doc. 1 ¶ 8; Doc. 19.)

## A.  Full Payment Rule

Congress has granted United States district courts original jurisdiction in

> [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

28 U.S.C. § 1346(a)(1).  In the seminal case of Flora v. United States, 362 U.S. 145, 163 (1960), the Supreme Court held that this statute rendered district courts a tribunal "for post-payment litigation."  That is, to maintain a tax suit in federal court the Plaintiff must "pay first, litigate later."  Id. at 170 n.37.  However, there is an exception to this rule.  USLIFE Title Ins. Co. of Dallas ex rel. Matthews v. Harbison, 784 F.2d 1238, 1423 n.6 (5th Cir. 1986).  Specifically, in the case of a divisible tax, such as the payroll withholding tax, "a responsible person need only pay the tax attributable to one employee for one quarter in order to maintain a claim for refund."  Id.

The case law with respect to this exception is sparse.  While the Eleventh Circuit has not directly addressed this issue, it has held that a taxpayer need only pay a divisible portion of a 100% penalty assessed under § 6672 to file suit in district court.  See Harris v. United

_States_, 175 F.3d 1318, 1319 (11th Cir. 1999) (allowing taxpayer suit where a divisible portion of the § 6672 penalty was paid, but failing to define divisible portion). However, several other Circuits have directly addressed the issue, consistently holding that, to challenge a 100% penalty under § 6672, a taxpayer need only pay the withholding tax of one employee for one quarter to meet the jurisdictional requirement. _See, e.g._, _In re Queen_, 16 F.3d 411, *3 (4th Cir. 1994) (table), _USLIFE_, 784 F.2d at 1423 n.6, _Lighthall v. C.I.R._, 948 F.2d 1292, *2 (7th Cir. 1991) (table), _Steele v. United States_, 280 F.2d 89, 91 (8th Cir. 1960), _Boynton v. United States_, 566, F.2d 50, 52 (9th Cir. 1977). Although there is no Eleventh Circuit precedent directly on point, the Court finds this ample out of circuit precedent persuasive, and will apply that rule here.

The Government concedes this precedent, but brushes it away as inapplicable without any explanation (_See_ Doc. 20 at 20 ("[A] taxpayer may pay the taxes attributable to the wages paid to just one employee for one quarter . . . and thereby satisfy the full payment rule.")), simply stating that this Court has no jurisdiction because "Todd failed to pay at least one employee's estimated tax liability for _each_ individual period." (_Id._ at 20 (emphasis added)).

9

This cursory argument is unsupported by the law as stated above and as set forth in the Government's brief. That is, Todd has satisfied the USLIFE rule by making a payment for one employee for one quarter for each company. 784 F.2d at 1423 n.6. Accordingly, Todd's payments are sufficient to establish jurisdiction over the contested periods.

B.   Claims for Refund

The Government advances a second argument with respect to jurisdiction, contending that Plaintiff's failure to file a separate claim for refund with respect to each period precludes suit pursuant to 26 U.S.C. § 7422[7] and 26 C.F.R. § 301.6402-2(d).[8]   (Doc. 19 at 21.)   Again, the Government provides no explanation for this theory. (Id. at 20-21.)

"The requirement for filing a proper refund claim is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." Computervision Corp. v. United States, 445

---

[7] 26 U.S.C. § 7422 requires a claim for refund to be filed prior to the institution of a suit for recovery of internal tax revenue.

[8] 26 C.F.R. § 301.6402-2(d) requires the filing of a separate claim for refund for separate taxable periods "[i]n the case of income, gift, and Federal unemployment taxes."

F.3d 1355, 1363 (Fed. Cir. 2006). For this reason, "formal compliance with the statute and regulations is excused when the informal claim doctrine is applicable." Id. at 1364. "[A]n informal claim is sufficient if it is filed within the statutory period, puts the IRS on notice that the taxpayer believes an erroneous tax has been assessed, and describes the tax and year with sufficient particularity to allow the IRS to undertake an investigation."[9] PALA, Inc. Employees Profit Sharing Plan & Trust Agreement v. United States, 234 F.3d 873, 877 (5th Cir. 2000) (citing United States v. Kales, 314 U.S. 186, 194 (1941)). The cornerstone of this inquiry is whether "it was [] ascertainable from the file" that a refund was being sought for the specific periods. Gustin v. United States Internal Revenue Serv., 876 F.2d 485, 488-89 (5th Cir. 1989).

Here, the filings clearly satisfy the informal claim doctrine. In the section of each refund form entitled "explanation and additional claims"[10] and relevant attachments, the periods in question are clearly listed as

---

[9] As there is no dispute that the claims were filed in a timely manner (see Doc. 19), the Court consider only the sufficiency of the filing.

[10] The Court notes the irony of the IRS requiring Plaintiff to fill out multiple copies of the same form for each refund when the form contains a section indicating that additional claims may be listed on the same form. (Doc. 1, Ex. A.)

contested. (Doc. 1, Ex. A, Attach. at 2.) The filings before the IRS clearly established that Plaintiff believed she was entitled to a refund for these periods, specifically indicating all of these periods in the section "Tax Years Involved." (Doc. 1, Ex. A, Attach. at 2.) Further, the IRS actually acknowledged that Plaintiff was contesting her liability, but refused to consider her challenge because of a procedural formality. (Doc. 1, Ex. B at 1.) Accordingly, the Court finds that the IRS was on sufficient notice of the claims under the informal claim doctrine and could have launched an investigation if it desired to do so.[11] Leeke v. United States, 737 F. Supp. 1013, 1016-17 (S.D. Ohio 1990) (rejecting the Government's argument that a separate claim for refund must be filed for each quarter under the informal claim doctrine where the refund filing and its attachments put the IRS on notice of the full extent of the claim for refund). Therefore, the informal claim doctrine is satisfied.

---

[11] The Court further notes that a contrary holding would eviscerate the ample Circuit Court precedent noted above that establishes that payment for one employee for one quarter is sufficient to lay the groundwork for jurisdiction in a divisible tax case. Under the IRS's rule requiring the filing of a specific request for refund with respect to each period, a Plaintiff would presumably be required to pay the tax for one employee for each quarter to create the basis for the filing of each refund form. The Court declines to undercut Circuit Court precedent in this manner.

Todd has satisfied the full payment rule and the informal claim doctrine, thereby establishing the Court's jurisdiction over the contested periods. Accordingly, the Defendant's Motion challenging this Court's subject matter jurisdiction is **DENIED**.

## II. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip.

Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue

of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

III. Tax Assessments

In this case, the IRS assessed Plaintiff with a 100% trust fund recovery penalty under 26 U.S.C. § 6672. Section 6672 provides, in pertinent part, as follows:

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

"Person" is defined to include "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

"Section 6672 imposes liability upon (1) a responsible person (2) who has willfully failed to perform a duty to collect, account for, or pay over federal employment taxes." Thosteson v. United States, 331 F.3d 1294, 1298-99 (11th Cir. 2003). Plaintiff contends that as a matter of law, she neither was a responsible person, nor willfully

15

failed to perform a duty.  (Doc. 23.)  Defendant contends that, as a matter of law, Plaintiff both is a responsible person and willfully failed to perform her duties under the tax laws.  (Doc. 19.)

"A person is responsible within the meaning of § 6672 if he has a duty to collect, account for, or pay over taxes withheld from the wages of a company's employees." Thosteson v. United States, 331 F.3d 1294, 1299 (11th Cir. 2003).  "Responsibility is a matter of status, duty and authority, not knowledge."  George v. United States, 819 F.2d 1008, 1011 (11th Cir. 1987) (emphasis added).  "Indicia of responsibility include[] the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees."  Thibodeau v. United States, 828 F.2d 1499, 1503 (11th Cir. 1987).  However, "Section 6672 responsibility is a matter of the power and authority to make payment of withholding taxes, which is not dispositively determined by corporate title or position."  Thosteson, 331 F.3d at 1299.  That is, "[a]uthority to pay in this context means effective power to pay."  Roth v. United States, 779 F.2d 1567, 1571-72 (11th Cir. 1986) (emphasis added).

No deep analysis is required to see that there is a serious issue of material fact in this case. That is, almost everything about Todd's role in the company is in dispute.[12] Importantly, Todd's effective power to pay is heavily disputed. As Todd's assistant Brazell testified:

> A. I've seen a check prepared [to pay a portion of the taxes] on several occasions, but if that's the dollar – what dollar amount that check was, I don't know. But I have seen checks that were prepared on different occasions that were never signed and were voided.
>
> Q. Who would have voided them?
>
> A. It would depend on who was there at the time. I know that Greg [Knowling] had asked for one check to voided. He wasn't paying it. The check was printed. He said: No, we're not doing it now. I've got something else I have to take care of first. I know that check was voided under extreme protest, and it was voided. This incident I remember, the check was prepared and Chuck [Cooper] wouldn't sign it.

---

[12] In setting forth the facts it believes to be undisputed, the Government often relies on statements by Knowling and Cooper as if these statements were given by neutral, uninterested parties. (Doc. 23.) This is in error. Knowling and Cooper have a substantial interest in Todd loosing this case. As the Government concedes, there is often more than one potentially responsible party for § 6672 liability and the Government does not attempt to recover additional penalties once it has achieved 100% recovery. (Doc. 20 n.2.) Even a cursory review of this case leads to the conclusion that if the Government cannot recover the money from Todd, Knowling and Cooper could potentially be held liable. Accordingly, Knowling and Cooper have every incentive to provide testimony aggrandizing Plaintiff's role in the companies, and their credibility—just as Todd's—is properly an issue for the jury and not this Court.

Q.   So that check was voided as well?

A.   I would assume it was voided.[13]

(Doc. 22, Ex. 3, Brazell Dep. at 45-46.)   Also cutting

against the Government's case is the undisputed fact that

Todd was an extreme minority shareholder in the companies.

(Doc. 19, Ex. 4, Todd Dep. at 29.)   Further, the widely

varying accounts of Todd's role in the company serve to

show that Todd's role is wholly unascertainable at this

---

[13]   In its brief, the Government seeks to characterize
Todd's defense in this case as a simple "just following
orders" or "Nuremberg" defense.   (Doc. 20 at 9-11.)   Of
course, such a defense is legally insufficient to avoid
§ 6672 liability where one had effective power to pay the
tax and was heavily involved in the day-to-day operations
of the corporation.   Roth, 779 F.2d at 1571-72 (citing
Brown v. United States, 464 F.2d 590, 591 n.1 (5th Cir.
1972)).     However,   check-writing   authority   does   not
inevitably lead to the conclusion that its possessor has
effective power to pay the tax under Roth.   Jay v. United
States, 865 F.2d 1175 (10th Cir. 1989) (overturning a grant
of summary judgment for the IRS, finding that a comptroller
who   had   check-writing   authority   was   not   asserting   a
"Nuremberg" defense where he claimed that his ability to
pay was circumscribed by his superior in the corporation
and he had little involvement in the day-to-day affairs of
the corporation).   In fact, the Jay Court considered Brown
and Roth and found them inapplicable to a case such as this
one.   See id.   This Court finds the Tenth Circuit's
construction of these decisions more plausible than the
Government's, which seems to suggest that under Roth check-
writing power would per se establish effective power to
pay.
     Here, taking the facts in the light most favorable to
the Plaintiff, her ability to pay the tax was circumscribed
by her superiors and she had little involvement in the day-
to-day affairs of the corporation.   (See Doc. 19, Ex. 4,
Todd Dep.; Doc. 19, Exs. 9, 10, Cooper Dep.; Doc. 22, Exs.
3, 4, Brazell Dep.; Doc. 22, Ex. 5, Price. Dep.)   Given
this, summary judgment is inappropriate under Jay.

stage of the case.[14]  (Compare Doc. 19, Ex. 4, Todd Dep.,
with Doc. 19, Ex. 5, Knowling Dep., Doc. 19 Exs. 9, 10,
Cooper Dep., Doc. 22 Exs. 3, 4, Brazell Dep., Doc. 22, Ex.
5, Price Dep.)  Even the depositions themselves are
contradictory as to Todd's role.  At times they suggest
that Todd possessed broad powers, and at other times they
suggest Todd was totally marginalized by the board members
and Knowling.  (Compare Doc. 19, Exs. 9, 10, Cooper Dep. at
23 (describing an expansive role for Todd in controlling
the companies' finances), with id. at 32 ("I could see
where that statement [that Ms. Todd did not have the
authority to make the decisions to pay creditors] might be
true . . . . I would not disagree with that statement.")).

Looking at the evidence in this case, Todd could have
been anything from a marginalized figurehead with little
authority to a full CFO with the power to pay the taxes.[15]

---

[14] Indeed, even Knowling and Cooper's roles are not clearly
established.  Knowling at one point contends that even
while he was there, "Charles Cooper really was handling the
monies prior to February 2002; I'd say more like – probably
starting in September 2001."  (Doc. 19, Ex. 5, Knowling
Dep. at 29.)
[15] Taking the facts in the light most favorable to the
Plaintiff, Todd was a marginalized figurehead with no power
to actually pay the taxes, precluding a grant of summary
judgment for the Government.  Jay, 865 F.2d 1175, see supra
Background.  Taking the facts in the light most favorable
to the Government, Todd was a full-fledged CFO with the
ability and responsibility to pay the taxes, precluding a
grant of summary judgment for Plaintiff.  Thosteson v.

The only way to determine Todd's role would be to credit the testimony of some witnesses over others. It is a longstanding principle that the job of determining the credibility of a witness is "for the jury alone." Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 216 (1931). Because the Court cannot determine whether Todd qualifies as a responsible party at this time, the Government's Motion for Summary Judgment is **DENIED**.

B. Willfullness

Because liability attaches under § 6722 only if a person is both responsible and willful, Todd may still be entitled to summary judgment if she can prove that her conduct was not willful as a matter of law. See Thosteson, 331 F.3d at 1298-99. "A voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States, constitutes willfulness." Brown, 591 F.2d at 1140.[16] Here, taking the evidence in the light most favorable to the Government, Todd allowed other creditors to be paid instead of making payments to the Federal government. (Doc. 21 ¶ 17; Doc. 30 ¶ 17.)

---

United States, 331 F.3d 1294, 1299 (11th Cir. 2003), see supra Background.

[16] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Therefore, Plaintiff is unable to prove that her actions were not willful as a matter of law.

Because Plaintiff is unable to prove that she was not a responsible person or that her actions were not willful as a matter of law, her Motion for Summary Judgment is **DENIED**.

## CONCLUSION

For the aforementioned reasons, the Parties' Motions for Summary Judgment are **DENIED**. Further, the Court finds that it has subject matter jurisdiction over all ten tax periods listed in the Complaint.

SO ORDERED this _29th_ day of September, 2009.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA